The last case for this morning is 24-4041 Rapid Enterprises v. U.S. Postal Service. Counsel for Appellant, if you'll make your appearance and proceed, please. Thank you, Your Honor. Scott Young on behalf of Rapid Enterprises, also known as Express One. This case involves a contract and alleged torts by the Postal Service against its contracting partner, Express One. Express One is a shipping reseller and it provides, it sold Postal Service products to various e-commerce platforms across the country. The Postal Service then engaged in a scheme to, in our view, steal this business. We don't believe this is mere allegation. We've included a slide deck in paragraphs 67 through 76 of our complaint that walks through this exact scheme. And the scheme was pretty simple. In 2019, the USPS forced us to reform our contract. There were two critical changes to the contract. First, Express One would have to be an exclusive reseller of postal products so there'd be no competition. And second, Express One would have to provide all of its confidential customer data to the Postal Service. How did they force your client to sign that contract? Well, they didn't force our client to sign the contract. Well, I thought you said they forced them to sign it. Then I misspoke or overstated, Your Honor. I mean, it's a contract between two parties. It's clearly drafted by Postal Service. We don't believe that they have equal bargaining power. They had, Express One had done business with Postal for six years up to that point. There are a limited number of companies that they can go to in this business. So they weren't forced to, but in terms of how the court interprets the contract here, it was drafted by Postal Service. And, of course, we're at the 12B6, 12B1 stage. And so the inferences related to the contract should go in our favor as the non-moving party. I'm not sure I follow that. Okay. Let me try again then, Your Honor. I apologize. The Postal Service drafted the contract. There's no provision that says it was jointly drafted. And part of our- They entered into the contract with 90-day termination on both sides.  And they could have said, no, we're not going to do that. We're going to just go do something else. And they didn't.  So where is the-just because one person benefited more now than you think the other person did, how does that void the contract? Well, we're not saying that it voided the contract. We're saying that it violated the contract. Well, I don't follow that it's going to be voided. Sorry? I say if you knock out the main terms of the contract, it's going to be essentially voided. Well, the allegations of the breach of the contract are in paragraph 118 of our complaint. And the Postal Service has tried to make this just an argument that they-about just the termination. Did they follow the termination language? And we've conceded that they complied with the termination language. But what they-the way they breached the contract is through this scheme, and termination is one part of the scheme. They get our confidential customer data. They use it against us in violation of Section 1N of the contract that says how they're going to use this data. They use it to compete against us and create this competing platform. That's the violation. It's not that they- Well, that was after the contract was terminated, though, wasn't it, that they would use any data that they had? I don't think that's after. I think they needed it before. I mean, that's why, again, we go back to the 2019 reformation of the contract. Yes, but freely contracting parties can protect themselves against harm. And you had an opportunity to protect yourself against the evils that you're complaining about now. I mean, the termination is one aspect, as you rightly point out. But as you-one of your claims, I guess count two, is violation of good faith and fair dealing. Well, you can't expand the terms of the contract under that provision, right? Well, certainly, you can't- Well, one of the provisions that you have conceded they could exercise under the contract is the right to terminate in 90 days, which they've done. Well, that's one provision of the contract. Another provision of the contract is Section 1N that expressly states what they can do with our confidential data. Does it say what they can't do with your confidential data? You can protect yourself to say, you can do this, but you can't do this, right? Correct. There could have been a term in that. But we're at the motion to dismiss stage, Your Honor. The government could have put a term in there that said, we can use this data in any way that we want. It didn't. It's a fair reading of Section 1N, and I'll just read it for the Court. It lists the data that we're required to give, and then it says, for the purposes of validating merchant and platform shipping volume and spend per product. It's a fair reading of that provision that they are not going to go use that data to compete against us. I have a hard time understanding why that is an exclusive reading of that provision. It says what we're going to do. I mean, and, you know, of course, we can talk about your other claims. But as it relates to the contract claims, it just seems to me that if you were concerned about that, if your client was concerned about that, they could protect themselves with respect to that by saying, you can do that, that's what you say you can do, but you can't do that. And then the line would have been, we will do it for only these purposes, or something along those lines, which is not in there. And so I just have a hard time understanding why they breached that. Well, it breached the contract, which, you know, as Judge Kelly points out, they exercised the term as it relates to good faith and fair dealing. I take it then, if I'm understanding correctly, that they did not exercise good faith and fair dealing. Was they did something beyond what they said they would do? Well, I don't think it's beyond what they said they would do. They did something that no contracting party would contemplate. Our client did not contemplate, when they provide them with all of their confidential data, that part of what they're going to do was use that in this scheme to compete against them. And our allegations state that this scheme began in 2016. So this is in place as they are coming to us, forcing us in 2019, or I apologize, not forcing.  Not forcing. But they're coming to us and saying, hey, we want to reform the contract in 2019. They don't tell us, this is part of a scheme that we're engaging in to get your data, and in their own words, in their own words on the slide deck, disintermediate the resellers and recapture the reseller spread. Now, to me, and we've cited the Precision Pine case, this is the classic example of a breach of good faith and fair dealing. I can't contract with you for an ulterior motive to steal your business. Well, would it make any difference if this particular contract was done in 2019? Would it make any difference if in a month after it was signed, they had terminated the contract with 90 days notice instead of five years afterwards? That's an interesting question. I mean, potentially, it depends on what they do with this data that they're trying to get. Could you or did anybody try to put in the contract that any data given to you pursuant to this paragraph will not be used after the contract terminates for any reason? Well, that language isn't in the contract, but I think that's a point that would come out in discovery, and that gets back to we're here at a motion to dismiss stage. The inferences go in our favor at this stage. Well, but there's no inference. It's pretty clear. That's the problem I have. It was pretty clear. Well, to follow up, at least as I understand, Judge Kelly, what he's saying is that, and what I would say, I'll put the words in my mouth, what I would say is, yes, the inferences go in your favor, but that doesn't mean that we add words to the contract. It doesn't mean that, and to your point about who drafted the contract, in my recollection of that rule of contract interpretations, if there's ambiguity. Well, there's no ambiguity that it would be, and the inferences would run in the favor of the person who didn't draft the contract. Well, there's no ambiguity where the provision says you can terminate within 90 days with written notice, and they gave you written notice, and they terminated within 90 days. There's nothing ambiguous about that. They exercised their rights under the contract. I agree there's nothing ambiguous about the termination. I think there's absolutely something ambiguous about what they can use our data for. I think there is a fair reading of Section 1N that does not allow them to use the data for the purpose they've used it for, and we've submitted evidence of that, not just pleadings, but it's, again, in their own slide deck, they state what they're using that data for. That isn't in the contract. That requires interpretation of Section 1N. It requires a court or a jury to say, I think you're allowed to do that, even though it's not included in there, or a court to say no. Under Section 1N, you're limited to what those specific purposes are for the use of the data. So that does require an interpretation, and that's the real critical issue here. It's the misuse of the data. Okay. Now, your complaint was dismissed, correct, for lack of jurisdiction? Well, part of it was dismissed for lack of jurisdiction. The contract claims that we've been talking about were dismissed under 12b-6. The PAEA claims and the TOR claims were dismissed for lack of jurisdiction, and just briefly on those- And do you quarrel with that dismissal? Absolutely. Are you suggesting the PRC does not have mandatory exclusive jurisdiction over the claims? Yes, absolutely. Okay. So the reason for that, Your Honor, is because under 39 U.S.C. 409a, the district court has original jurisdiction over all these claims. The section that goes to the PRC is 3662. It arises under rate and service complaints section of the Postal Act. This is not a rate and service complaint issue. This is a significant contractual dispute, and the two cases that this court has decided on this issue about PRC jurisdiction, White and Bovard, both highlight this. White was about the- Don't they both cut against you, if memory serves? I don't think so. Why not? Because they deal with postal service. They don't deal with the dispute about misappropriation of trade secrets like we have here. I mean, White is a complaint by a citizen about the refusal to hold mail, and Bovard is about the change of mail service from the morning to the afternoon. Those are drastically different from the claims that are at issue here. Well, that's true, but why isn't this a service question? I mean, the issue underlying is you were providing a service for the postal service. In your view, the scheme that the postal service undertook deprived you of the ability to undertake that service. Why isn't it a service complaint? It's not the one that's in White and Bovard, but why is it underlying, at its essence, a complaint about your treatment by the postal service relevant to service? Sure. Well, we are not complaining about postal service that was provided to us. We are not saying, hey, you shouldn't have brought- I don't like that you brought my mail in the morning or in the afternoon. We are a contracting partner engaged in a business worth tens of millions of dollars with the postal service. This is not about a rate complaint. This is not about postal service. I didn't mean to interrupt you.  No, no, no. I'm done. I guess the question then would become is the language naturally- does the language naturally preclude these kinds of complaints? I mean, the issue is not whether it's White or Bovard or it's like those. The issue is does the word service, is there anything that would lead us to believe that that naturally excludes a category of activity that's going on here? Because, no, you're not complaining about the postal service doing something to you, but your contractual relationship relates to the service of the postal service that you're essentially doing for them. I mean, you're acting as essentially an entity that is doing something that- well, the essence of this suit, that if you weren't doing it, the postal service would be doing it. I would disagree with that, Your Honor. I don't think- I think the critical language here actually is in the statutes. 3662 says may go to the PRC. Original jurisdiction clearly under 39 U.S.C. 409A lies with the district court. So we're entitled to go to the district court. If you have a service complaint, whether or not it's read incredibly broadly, as Your Honor is questioning me about, or narrowly about kind of the issues we see in White and Bovard, then an individual can go to the PRC, but they're not required to. It's permissive language, may. With that, Your Honors, I would submit, unless you have additional questions for me. Thank you, Counsel. Thank you. Thank you. May it please the Court, Tiffany Carney on behalf of the appellee, the United States Postal Service. The lower court's two orders dismissing Express One's claims should be affirmed. Your Honors, this is a case about the Postal Service's decision to exercise its right to terminate a reseller contract after concluding that selling its own products to customers directly made more sense for the agency and the public. Express One appeals the dismissal of its claims, all of which are supported by overlapping and largely implausible allegations that the Postal Service improperly terminated the contract, misappropriated so-called business information, and developed a, quote, scheme to steal its business. Why don't we start with the pay-up claim and the argument about permissive language of may. Why doesn't that mean that they did not have to go to the Postal Regulatory Commission, but in fact could go to district court? The district court, I believe, correctly concluded that the word may here means that a grieved party's decision to file a complaint is optional, but the path of which they seek that review is not, and it's in the language of the statute itself. We think this interpretation makes sense. When Congress revised this section in 2006 with the Postal Act, it was against the backdrop of many lower court and at least two federal circuit opinions, the LeMay decision and the Bovar decision in this court, holding that the PRC has exclusive jurisdiction over claims in that section. As held by the Supreme Court, when all or nearly all of the relevant judicial decisions give a term or concept a consistent judicial gloss, court should presume that Congress intended that term to have the same meaning in a later enacted statute. Our Bovar decision was not presidential, right? Correct, Your Honor. It's an unpublished decision. However, I understand under this court's rules that if it is persuasive, then we can cite it. That's not what I was saying that for. What I was saying that for is if it's going to find a backdrop for what Congress did, presumably you would want a decision that actually speaks for the court. Correct, Your Honor. Ideally, that would be the situation. Congress, however, when looking at the decisions up until that point, I think largely if almost entirely had held that the PRC had exclusive jurisdiction over the old version of 3662. And in that old section, the word may was used there as well. So I think that's, I would also say that the LeMay case, the Eighth Circuit case, that was a published decision. Also, Your Honor, back to that point, the legislative history supports this interpretation. Senator Susan Collins, who introduced the Postal Act and sponsored it, described it as transforming the existing Postal Rate Commission into a Postal Regulatory Commission with enhanced authority to ensure that there's greater oversight over the Postal Service. And Senator Collins' interpretation of the bill is also supported in the statute itself. As you can see in the new section 3662A, Congress added types of claims to PRC's jurisdiction. It added 4A claims, 101D, 412, and a list of them. Also, Your Honors, I point you to Chapter 5 of Title 39. That has to do with the PRC's authority. In 502A, Congress required that PRC commissioners have qualifications and expertise necessary to carry out the, and I'll quote here, enhanced responsibilities accorded to commissioners under the new Postal Act in 2006. These qualifications included professional standing and demonstrated expertise in economics, accounting, law, or public administration. So you can see this is new. This was new in the 2006 Act. They're providing additional requirements to be a commissioner on PRC. So with the prior decisions interpreting that section and with the enhanced qualifications, I think it's fair to say that Congress intended for the PRC to have exclusive jurisdiction and broader authority over complaints alleging 404A violations as well as other violations of the Act. Now since 2006, all federal appellate courts to consider this issue, including this Court's recent decision in White, and also the Federal Circuit's decision in Foster v. Pitney Bowes, have held that Section 3662 grants PRC exclusive jurisdiction to the Postal Act claims listed there. In each of these cases, the courts discern Congress's intent to channel claims to the PRC either by looking at the language of the statute itself or at both the language and the statute's legislative history. And I would also add that the Federal Circuit's decision in Foster v. Pitney Bowes also dealt with allegations of 404A violations and still held that the plaintiff was required to first file those claims in the PRC first. Your Honor, Counsel for Express 1 mentioned 404A. I would say that there is an exception. Its grant of jurisdiction does not apply to exceptions otherwise provided in this title, and we would submit that Section 3662A is one of those exceptions. There are other exceptions as well. 409C provides that tort claims must follow the Federal Tort Claims Act. So there are limitations to that grant of jurisdiction. Next, Your Honor. The Court correctly held that the FDCA bars Express 1's misrepresentation in estoppel tort claims, counts 4 and 10. FDCA governs all tort claims arising out of a- Could you slow down just a little? I don't listen fast enough. Certainly, Your Honor. FDCA governs all tort claims arising out of activities of the Postal Service. That's under 39 U.S.C. 409C. And the Supreme Court has held in Neustadt and then reaffirmed in Bloch v. Neal that the FDCA 28 U.S.C. 2680H bars any claims against the government arising out of misrepresentation or deceit, which includes both negligent and intentional misrepresentation. Express 1's count 4 alleges the elements of the tort of misrepresentation. And given these allegations, the Court's dismissal of that claim should be affirmed. Express 1's estoppel claim, count 10, should likewise be dismissed. Express 1 alleges the same facts in support of count 10 as it does in support of the misrepresentation claim. Specifically, Express 1 alleges that the Postal Service made representations. The U.S. Postal Service knew the representations were false. Express 1's relied on those representations, and Express 1 suffered damages. As the Supreme Court held in Richmond, misrepresentation claims framed as estoppel claims are also barred under the FDCA. So that part of the decision should be affirmed. Next, the District Court correctly held that Express 1 failed to exhaust its remedies before bringing its misappropriation tort claims, count 6 through 9. Those claims, again, they track the elements of misappropriation under Utah law. They each allege that Express 1 had a protectable trade secret, and the secret was misappropriated by the Postal Service. Therefore, FDCA applies to these claims, and they were required to exhaust the remedies before they could bring them to District Court. Counsel, can I ask you about that? The District Court's order, as I recall, made reference to a recent Supreme Court opinion, Santos-Zaccaria. But I don't see this came up in the briefs, but in that case, Supreme Court, looking at a different statute, held the exhaustion requirement was non-jurisdictional. It's a classic or quintessential claims processing rule. Do you think that case abrogates our precedents that say the FDCA exhaustion requirement is jurisdictional? I do not, Your Honor. I think, first, the Supreme Court's decision in Santos considered only whether Section 1252D1 of the Immigration Statute was jurisdictional. However, the FDCA, unlike the INA, that statute, constitutes a waiver of the government's sovereign immunity. So the notice requirements established by the FDCA, those are typically strictly construed. I would also add that the District Court recognized that the Tenth Circuit, as you recognize, has yet to apply that decision outside the immigration context. I think more recently, this past November, in the case of Rowland v. Mataboussian, 121F41237, held that the FDCA's administrative exhaustion requirement continues to be jurisdictional. So I think this Court's precedent, even after that decision, should be followed. Where did that case come from that you just cited, and is it in your briefs? It's in the Tenth Circuit in 2024, Rowland 121F41237. Is it in your brief? It's not, Your Honor. I believe it was decided after... No fault, but could you just follow the 28J letter, please? 28J, yes. Thank you. Yes, Your Honor. With respect to exhaustion, our position is that Express 1 had not met the exhaustion requirements. The letter to the Pricing Center did not meet the requirements under Postal Service Notice Regulations, which required the notice to be sent to either the torts court... Is exhaustion jurisdictional or not? For the FDCA, yes, Your Honor, it is jurisdictional. Sorry? Yes, Your Honor. It is jurisdictional in the FDCA, and I believe you can see that in the Bradley decision, which we did cite in our papers, but also more recently in that Rowland decision.  The letter, again, we don't believe followed the regulations of the Postal Service. Also, Your Honor, I would add that the some certain requirement was also not met. The letter to the Pricing Center, if you look at that, it's in Appendix 613 to 629. Nowhere does it reference the actual amount of damages. So under this court's decision in Bradley, that would not satisfy that part of the FDCA exhaustion requirement. Your Honor, the other two claims, the federal statute DTSA claim, the court should also dismiss this for an alternative reason in that that statute was not intended to reach the Postal Service. As the district court correctly held, that statute indicates Congress did not intend to, district court correctly held that Congress did not intend to create a loophole to authorize plaintiffs to sue the Postal Service for a misappropriation for tort that would otherwise be subject to the FDA's exhaustion requirement. What claim were you referencing? The DTSA claim. I believe it's a misappropriation of tort claim alleged under a federal statute. Again, the allegations, they all tracked the same elements of a misappropriation and therefore believe they should fall under FTCA requirements. As far as the takings claim, Your Honor, I don't see the takings claim argument made in the opening brief. I would say that that alone, they've waived that claim. But with respect to that claim, it was only asserted against the United States and any claim for money over, for damages over $10,000, it must be brought to the Court of Federal Claims. And so that claim should be dismissed for that independent reason. Is that Claim 9? It's Claim 9. As far as the Marist decision, the 12B6 decision, for a breach of contract claim, Express 1 maintains that the Postal Service breached Section 1N, the preamble and 404A of the Postal Act. As the district court correctly held, 404A of the Postal Act was not incorporated into the contract itself. Under the courts, under decisions such as Northrop Gumman, it's a federal circuit decision. Any statute or document that's supposed to be incorporated into a contract, it must identify, the contract must identify with detailed particularity and also make it express and clear that the parties intended to incorporate the statute, the regulation, or the external document. And in this case, the contract does not do that. And so the court correctly held that that was not incorporated into the contract itself. The court also correctly held that Section 1N, there was no breach there. I think your honors have gotten to the heart of that issue. There was no duty provided or obligation required of the Postal Service in that section. The term itself just explains what the Postal Service would do with the information for purposes of validating merchant and platform shipping volume. It does not otherwise restrict that information. I would also say it's not ambiguous, but to the extent there's any ambiguity, you would first look to other portions of the contract itself to understand that language. I think you can look at even just the confidentiality section. There, it doesn't define any information provided under the contract as confidential or protected or a trade secret. It only provides for a way that the Postal Service could redact information if it chose to when it submitted to the PRC. The express one also had an opportunity to raise any confidentiality concerns with the PRC when it was submitted there for approval, and there's no indication or no allegation that it did so. So there's no expectation of any duty imposed on the Postal Service to restrict its use of that information. Just quickly, in terms of the implied duty of good faith, we also ask that this court affirm that decision. The court correctly looked at whether the implied duty asserted by express one would expand its rights beyond the contract and also whether express one's expectations were reasonable in light of the contract's terms. I think there, again, and I think Chief Judge Holmes got to that issue, that it's not the expectations of express one were not reasonable given both there's an unconditional right to terminate. Either party could do so with 90 days notice. So there's no expectation that the Postal Service would somehow continue the contract indefinitely or even until the end of the four-year term. Let me ask you this hypothetical, and it's sort of general but applies to this case, assuming that if we, for the moment, assume that the Postal Service did everything that essentially that they say you did. In other words, and writ large, the Postal Service had a plan, and its plan was to eventually take this over, and they wanted the data. And so the Postal Service says, hey, express one, we want you to enter into a new agreement in 2019, and we have exactly the terms that we have in this agreement now. Would the outcome in the district court have been any different? I do not think so, Your Honor. I think you got to the heart of the matter when you said these are two contracting parties to the extent, and I'm sorry, I'm over time. Please. To the extent Express One believed that its data should not be used or should not be evaluated in terms of whether or not the Postal Service should choose to sell its products directly rather than through a reseller like Express One, it could do so. I mean, the terms of the contract are very clear as to the discounts provided, the information that was required under the contract. If Express One had concerns, it could have raised them and altered the terms. So to the extent that the Postal Service planned to ultimately sell its products directly at some point in the future, I do not think that would be a breach of the implied duty. All right. Thank you, Counsel. Case is submitted. Thank you, Your Honor. I apologize. Did you have additional time? I do. I've got seven seconds. I would not deprive you of seven seconds. In fact, if you'll give him 30 since the government went over a little, please. Great. Two quick points, Your Honor. First of all, the USPS Pricing and Classification Service Center is, quote, any office of the Postal Service for presentment. That's under 29 CFR 912.4. So we absolutely satisfied the FTCA presentment. This is a hyper-technical reading that they're advancing here. And second, under the covenant of good faith and fair dealing, it just defies explanation that a contracting partner has to guess that the party it contracts with is not going to use the data they provide and compete against them. They didn't have the data. How else were they going to get it? Google? I mean, they didn't have this. They needed a source to get it. It was us. As to count nine, do you accept that that's waived, this argument about the takings claim? The takings? I don't have an answer for that, Your Honor. I apologize. I should be better prepared to say that. So, no, I don't. But I don't have a good response. Okay. I'll take that. Thank you, Your Honor. The case is submitted. Thank you for your fine arguments. The court will be in recess until 9 a.m. tomorrow. Thank you.